**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DOMINIC CASTLEBERRY,

       Plaintiff,

v.                                            Case No. 10-11460

DAIMLER CHRYSLER TRUCK FINANCIAL
"aka" CHRYSLER FINANCIAL SERVICES
AMERICAS, LLC,

       Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE, AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF THE COMPLAINT AND
DEFENDANT'S COUNTERCLAIM**

On March 23, 2010, pro se Plaintiff Dominic Castleberry filed a complaint alleging that Defendant Daimler Chrysler Truck Financial n/k/a Mercedes-Benz Financial Services USA LLC violated the Fair Credit Reporting Act ("FCRA") and the Michigan Collection Practices Act ("MCPA") by reporting allegedly inaccurate information regarding Plaintiff's delinquent loan account to various consumer reporting agencies (CRAs), despite repeated reports of inaccuracy from Plaintiff.  Plaintiff also pled state-law defamation and negligence claims arising from the same set of facts.  On April 20, 2010, Defendant filed an answer and counterclaim against Plaintiff for breach of contract arising out of Plaintiff's admitted failure to make payments in accordance with the loan agreement the parties enacted in August 2007.  Before the court is Defendant's motion for summary judgment on Plaintiff's original claim and Defendant's counterclaim, filed on March 30, 2012.  Plaintiff filed a response to the motion on May 29, 2012, four

days late. Defendant submitted a motion to strike the response on May 31, 2012, and replied on June 12, 2012. After reviewing the briefs and exhibits, the court concludes that a hearing is unnecessary. See E.D. Mich. LR 7.1(f)(2). The court will allow the late response, and deny the motion to strike. Nonetheless, the court will grant Defendant's motions for summary judgment on all counts.

## I. BACKGROUND

The facts underlying this case stem from Defendant's reports to numerous CRAs regarding a debt Plaintiff purportedly owes Defendant for a loan on a repossessed tractor. In August of 2007, Plaintiff and Defendant entered into a Direct Purchase Money Loan and Security Agreement for the sale of a Freightliner tractor. (Def.'s Mot. for Summ. J. Ex. 1 at 2). Defendant asserts that Plaintiff neglected to make any payments toward the loan obligation after October 28, 2008, thereby defaulting on the Agreement. (Id. Ex. 3 at 2).[1] On January 7, 2009, Plaintiff rejected Defendant's offer of a three month extension of payments, at which time Defendant advised Plaintiff that it would place the vehicle out for repossession. (Id. Ex. 4 at 5-6). On January 12, 2009, the vehicle was collected by a third party company at Defendant's expense. (Id. Ex. 5 at 2). Plaintiff claims that he offered to deliver the vehicle to a Freightliner dealership – although Defendant allegedly declined this offer – and so he considers the vehicle as having been voluntarily surrendered, not repossessed.[2] (Pl.'s Resp. to Mot. for Summ.

---

[1] Plaintiff denies this allegation but provides no proof of payment after this date. (Pl.'s Resp. to Mot. for Summ. J. ¶ 7).

[2] Plaintiff offers no evidence of this offer and it is not recorded in Defendant's call logs of that conversation. (Def.'s Mot. for Summ. J. Ex. 4 at 2-8).

J. ¶ 12). On January 20, 2009, Defendant sent a notice of disposition of property to 621 South Fayette, Saginaw, Michigan, 48602, which Plaintiff admits was his mailing address during the entire month of January, 2009. (Def.'s Mot. for Summ. J. Ex. 6 at 2; Ex. 2 at 15). On or about March 13, 2009, Defendant sold the vehicle to a third party for $15,840.00, bringing Plaintiff's deficiency balance to $29,211.41, plus interest at 18% and costs accrued. (*Id.* ¶ 18, 20).³ As of filing of Defendant's reply brief on June 12, 2012, this balance has not been paid. (Def.'s Rep. to Mot. for Summ. J. at 4).

Plaintiff claims that from April 2009 through May 2012, Defendant reported "conflicting, inaccurate and incomplete" credit information to Experian, Equifax and TransUnion ("the CRAs") regarding his account with Defendant. (Pl.'s Resp. to Mot. for Summ. J. at 12). Plaintiff disputes the entire reported account history, including balance, date of first delinquency, date of closure, the status as repossession instead of voluntary surrender, and the classification as an auto loan instead of commercial. (*Id.*) Plaintiff contends that he submitted "a minimum of [six]" disputes regarding his account information but that Defendant continues to report inaccurate information. *(Id.* at 13, 15). Defendant maintains that it fulfilled its obligations to investigate each of Plaintiff's disputes and report its findings to the CRAs. (Def.'s Mot. for Summ. J. Ex. 10 ¶ 18-19). Plaintiff claims that the allegedly incorrect information has caused him "credit denials, low credit score, damage to credit ratings, defamation, inconvenience, humiliation, embarrassment, and loss of opportunity." (Compl. ¶ 39).

---

³Plaintiff denies this deficiency but provides no evidence to rebut Defendant's evidence of the Agreement and subsequent default or the amount of the deficiency. (Pl.'s Resp. to Mot. for Summ. J. ¶ 20).

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial."

*Horton*, 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (*Id.* at 252 (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III. DISCUSSION

Plaintiff's complaint contains five counts against Defendant, including: (1) one negligence claim; (2) two FCPA claims; (3) one MCPA claim; and (4) one state-law defamation claim. Defendant's counterclaim asserts a breach of contract claim against Plaintiff. Below, the court examines Plaintiff's five counts and Defendant's single count and concludes that Defendant is entitled to summary judgment on all counts.

### A. FCRA Claims

In counts II and IV, Plaintiff asserts claims against Defendant for alleged violations of 15 U.S.C.A. § 1681e(b) and s-2. The purpose of the FCRA is to require

5

> reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C.A. § 1681(b). Plaintiff alleges that Defendant violated § 1681e(b) by "willfully fail[ing] to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report in violation of 15 U.S.C.A. § 1681e(b)." (Compl. at 7). Plaintiff argues in the alternative that Defendant negligently failed to do the same. (*Id.*) Plaintiff points to § 1681n and § 1681o, which establish civil liability for, respectively, willful and negligent failure to comply with the regulation. (*Id.*, 15 U.S.C.A. § 1681n, o). Plaintiff also claims that Defendant violated § 1681s-2 by failing to conduct a reasonable investigation regarding the details of his account after multiple notices of dispute. (Pl.'s Resp. to Mot. for Summ. J. at 19).

### 1. § 1681e(b)

Section 1681e(b) requires consumer reporting agencies to follow reasonable procedures when preparing a consumer report to assure maximum possible accuracy of the information concerning the individual about whom the report relates. *See* 15 U.S.C.A. § 1681e(b). Defendant incorrectly argues that § 1681e(b) does not create a private right of action. (Def.'s Mot. for Summ. J. at 4-5). § 1681e(b) does allow a consumer to bring an action against a consumer reporting agency for violation of the statute. *See, e.g., Spence v. TRW, Inc.*, 92 F.3d 380 (6th Cir. 1996)*; Nelski v. Trans Union, LLC*, 86 F. App'x 840 (6th Cir. 2004). However, Defendant accurately asserts, and Plaintiff concedes, that § 1681e(b) is inapplicable to Defendant because Defendant

6

is not a consumer reporting agency as defined by the statute,[4] but a furnisher of information to credit reporting agencies. (Def.'s Mot. for Summ. J. at 3-4; Pl.'s Resp. to Mot. for Summ. J. at 17). As such, Defendant is not subject to the requirements of § 1681e(b) and summary judgment on count II will be granted in favor of Defendant.

### 2. § 1681s-2(a)

Count IV states a claim under § 1681s-2, which is divided into two subsections: s-2(a) and s-2(b). Section 1681s-2(a) requires furnishers of information to provide accurate information to consumer reporting agencies. *See* 15 U.S.C.A. § 1681s-2(a). It is irrelevant here whether Defendant, who admits to being a furnisher of information under the FCRA,[5] provided inaccurate information to a consumer reporting agency because, as Plaintiff concedes,[6] § 1681s-2(a) does not create a private right of action. *Yaldu v. Bank of Am. Corp.*, 700 F.Supp.2d 832, 842 (E.D. Mich. 2010) ("There can be no doubt that the duties imposed by 15 U.S.C.A. § 1681s-2(a) can only be enforced by government agencies and officials." (citation omitted)). Thus, Plaintiff is unable to maintain a claim under § 1681s-2(a).

### 3. § 1681s-2(b)

---

[4] A consumer reporting agency is defined by § 1681a(f) as any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. 15 U.S.C.A. § 1681a(f).

[5] Def.'s Mot. for Summ. J. at 3-4

[6] Pl.'s Resp. to Mot. for Summ. J. at 17

Section 1681s-2(b) outlines the requirements on furnishers of information upon notice of a dispute regarding the completeness or accuracy of information reported to a CRA. *See* 15 U.S.C.A. § 1681s-2(b). Furnishers are obligated under this subsection to investigate the disputed information and report the results of the investigation to the CRA. (*Id.*) Plaintiff contends that Defendant has repeatedly violated this obligation by neglecting to contact Plaintiff with regard to the disputes and continuing to report inaccurate information after notice of the disputes. (Pl.'s Resp. to Mot. for Summ. J. at 18-19). Defendant replies that "Plaintiff has not and cannot identify any failure by [Defendant] to comply with [§ 1681s-2(b) requirements]," because Defendant "complied with its investigative and reporting obligations." (Def.'s Mot. for Summ. J. at 6). Plaintiff does not deny that Defendant carried out investigations and submitted reports to the CRAs, but he asserts that the information reported back to the CRAs was inaccurate and Defendant thereby violated § 1681s-2(b) by failing to complete a reasonable investigation. (Pl.'s Resp. to Mot. for Summ. J. at 18-19).

The Sixth Circuit has acknowledged that a CRA's investigation upon notice of a dispute from a consumer must be reasonable. *Nelski*, 86 F. App'x at 847. Although there are no Sixth Circuit cases that expand this reasonableness standard to furnishers of information, other Circuits have adopted this approach. *See, e.g.*, *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004) ("It would make little sense to conclude that, in creating a system intended to give consumers a means to dispute and, ultimately, correct inaccurate information on their credit reports, Congress used the term "investigation" to include superficial, *un*reasonable inquiries by creditors" (emphasis in original)); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155 (9th Cir. 2009);

8

*Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010). Plaintiff argues that Defendant's investigation was unreasonable, but fails to provide any cogent argument or evidentiary support for this position.

Instead, Plaintiff offers conclusory and vitriolic statements, e.g., that the court "should be shocked and troubled at Defendant's arrogance and defiance of the FCRA regarding their lack of performing their federally mandated duties." (Pl.'s Resp. at 19.) This argument, however, fails to create an triable issue as to how Defendant performed an unreasonable investigation into Plaintiff's disputes. Defendant offers post-investigation reports, which Plaintiff fails to specifically address, indicating that Defendant did in fact conduct investigations. (Def.'s Mot. for Summ. J. Ex. 9 at 2-6). Plaintiff points to no evidence on which a reasonable jury could conclude that Defendant's investigation was unreasonable. *See* 15 U.S.C.A. § 1681s-2(a)-(b). Defendant is therefore entitled to summary judgment on the substance of this claim.

### i. Damages

Moreover, even if Plaintiff could sustain a claim for an unreasonable investigation, Plaintiff has failed to show a triable issue with respect to damages. The FCRA permits a consumer to recover "any actual damages sustained by the consumer as a result" of the negligent or willful failure of an agency to comply with its obligations under the FCRA. 15 U.S.C.A. § 1681o(a)(1); n(a)(1)(A). Actual damages may include economic damages as well as damages for humiliation and mental distress. *Bach v. First Union Nat. Bank*, 149 F. App'x 354, 361 (6th Cir. 2005). In the case of a willful violation, Plaintiffs may recover statutory or even punitive damages in lieu of actual damages. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 47 (2007). Violations of the

FCRA are considered willful if they are in reckless disregard of the consumer's rights. (*Id.* at 52).

Although "state of mind is typically not a proper issue for resolution on summary judgment." *Picha v. City of Parma*, 958 F.2d 372, 374 (6th Cir. 1992) (citation omitted), issues concerning a party's state of mind are "not necessarily inappropriate" for summary judgment, *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Plaintiff argues that Defendant's actions were willful because it had sufficient notice of the disputes and continued to report the information inaccurately.  (Pl.'s Mot. for Summ. J. at 21).  Plaintiff's allegations of willfulness on the part of Defendant are insufficiently supported.  Even assuming that Defendant reported minor inconsistencies or somehow failed to conduct a reasonable investigation, this behavior amounts, at most, to a negligent violation.  Plaintiff is therefore unable to sustain an action for statutory or punitive damages under 15 U.S.C.A. § 1681o, and his only remaining potential recourse would be for actual damages for a negligent violation under 15 U.S.C.A. § 1681n.

Plaintiff asserts that his multiple credit denials qualify as actual economic damages.  (Pl.'s Mot. in Resp. to Summ. J. at 21).  Plaintiff's credit denials explicitly state the reasons for his denial as: "serious delinquency;" "too few accounts currently paid as agreed;" "length of time accounts have been established;" "repossession;" "too many recent inquiries on credit file;" "unable to verify employment;" etc.  (*Id.* Ex. K). None of these factors are in any way related to any potentially inconsistent information regarding Plaintiff's account that Defendant provided.  Plaintiff's exhibits show only: 1) that his credit score is low and 2) that he has had difficulty securing new credit because of his credit history; they do not support his claim that this is a result of Defendant's

inaccurate reports. Plaintiff provides no evidence to support his allegation that the vehicle was voluntarily surrendered, other than his own Affidavits, while Defendant provides clear evidence that the tractor was repossessed at Defendant's expense. (Def.'s Mot. for Summ. J. Ex. 5 at 2). Further, Plaintiff never clarifies the difference between having his account reported as a commercial vehicle or an auto loan, nor why it is in any way detrimental to him to have the account reported as the latter. Plaintiff has therefore not provided sufficient evidence to support a claim for economic damages.

Plaintiff also asserts humiliation and extreme mental distress as actual damages. (Pl.'s Resp. to Mot. for Summ. J. at 21). He has provided no evidence of mental or emotional distress stemming from any inaccuracies in Defendant's reports; while his poor credit rating is likely causing him distress and humiliation, it has not been affected in any material or consequential way by Defendant's record-keeping. Plaintiff is therefore unable to support a legitimate claim for damages for a negligent violation of the statute. *See* § 1681s-2(n).

Viewing the evidence in the light most favorable to Plaintiff, he has provided no evidence to support a claim for actual damages. Accordingly, the court finds that there is insufficient evidence for Plaintiff to move forward with his claim under § 1681s-2(b) and summary judgment will be granted in favor of Defendant on count IV.

### B. MCPA Claim

Plaintiff alleges that Defendant violated the MCPA by reporting inaccurate information to CRAs and debt collection agencies, as well as by "failing to implement and follow procedure[s] designed to prevent a violation by an employee" and using

"harassing, oppressive, or abusive methods." (Pl.'s Resp. to Mot. for Summ. J. at 25-26; Compl. at 9). The MCPA regulates the form and timing of collection activities on a claim or debt arising out of a purchase made primarily for personal, family or household purposes. (Mich. Comp. Laws Ann. § 445.251 *et seq.*) Because Plaintiff fails to identify any collection activities on the part of Defendant and because the disputed debt arises out of a primarily commercial purchase, Plaintiff has not set forth a cause of action under the MCPA and Defendant is therefore entitled to summary judgment as a matter of law.

Plaintiff has not provided evidence of any action or communication from Defendant regarding collection of a debt. Plaintiff points to a collection letter from a third party and Defendant's reports to CRAs, neither of which qualify as collection acts on the part of Defendant. (Pl.'s Mot. in Resp. to Summ. J. at 25-26). Furthermore, the MCPA only applies to collection of a debt arising out of a purchase made primarily for personal, family or household purposes. (Mich. Comp. Laws Ann. § 445.251(a)). Plaintiff concedes that the debt at issue was incurred as a result of a purchase made "strictly for a business use," and this intention was explicitly included in the original agreement, which states that the purchase was made "primarily for business or commercial purposes, and not for personal, family, household or agricultural purposes." (Pl.'s Resp. to Mot. for Summ. J. at 26; Def.'s Mot. for Summ. J. Ex. 1 at 1.) Therefore, the MCPA applies neither to Defendant's actions nor to the debt at issue, so summary judgment on count V will be granted in favor of Defendant.

### C. Defamation Claim

Plaintiff's final (unnumbered) claim is a state-law defamation claim. Plaintiff alleges that Defendant has defamed him by "repeatedly publish[ing] incorrect and harmful information about his credit history," and that Defendant's conduct "was done with malice and willful intent to injure." (Pl.'s Resp. to Mot. for Summ. J. at 27-28). Defendant maintains that it never made any false statement and therefore cannot be held liable for defamation, and further that Plaintiff cannot establish the requisite actual malice to recover for non-economic damages. (Def.'s Mot. for Summ. J. at 11, 14).

The court need not reach the merit's of Plaintiff's defamation claim, because it is preempted by the FCRA. The FCRA contains two overlapping and potentially contradictory sections governing the possibility of a state law action arising from violation of the statute. *Compare* 15 U.S.C.A. § 1681h(e), *with* 15 U.S.C.A. § 1681t(b)(1)(F). However, § 1681h(e) applies only to claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m . . . or on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action." *See* 15 U.S.C.A. § 1681h(e). None of these descriptions apply to Plaintiff's claim, so § 1681h(e) does not govern Plaintiff's defamation claim. Section 1681t(b)(1)(F), however, preempts any state-law defamation claim based on a violation of § 1681s-2, the only section under which Plaintiff has identified a violation. *See* 15 U.S.C.A. § 1681t(b)(1)(F). Plaintiff's defamation claim is therefore preempted, and the court will grant summary judgment in favor of Defendant.

### D. Negligence Claim

Plaintiff vaguely asserts a general claim of negligence in his original complaint without identifying any specific duty or obligation that Defendant negligently failed to

13

perform. (Compl. at 6). Plaintiff does not even reference this claim in his response to the motion for summary judgment. Accordingly, summary judgment on Plaintiff's negligence claim (Count I) is granted in favor of Defendant.

### E. Defendant's Breach of Contract Claim

Defendant asserts a breach of contract claim based on Plaintiff's failure to make his payments to Defendant for the financing of Plaintiff's vehicle. (Def.'s Mot. for Summ. J. at 17). Under the terms of the contract, Plaintiff was to make 48 monthly payments to Defendant of $1,372.29 each, beginning September 28, 2007. (*Id.* at v). Plaintiff has not made a payment under this agreement since October 28, 2008, thereby violating the terms of the agreement. (*Id.* Ex. 3 at 2).

Plaintiff first attempts to defeat Defendant's breach of contract claim by asserting that Defendant did not provide Plaintiff with a valid notice of disposition of property as required by the Uniform Commercial Code ("UCC").[7] (Mich. Comp. Laws Ann. § 440.961; Pl.'s Resp. to Mot. for Summ. J. at 30-33). Plaintiff claims that he informed Defendant of a change of address during a phone conversation on or about January 7, 2009, but that Defendant nonetheless sent the notice of disposition to his former address on January 20, 2009. (*Id.* at 31). Plaintiff provides no evidence of this notification of change of address and Defendant has no record of it in its call logs from the conversation on January 7. (Def.'s Mot. for Summ. J. Ex. 4 at 2-8). Furthermore,

---

[7]Defendant argues that Plaintiff had waived his right to receive a notice of disposition under the initial contract between the parties. (Def.'s Mot. for Summ. J. at 4). However, a debtor may waive his right to notice of disposition only by a post-default authenticated agreement. Based upon that, the provision in the original contract was unenforceable. (Mich. Comp. Laws Ann. § 440.9611 cmt. 9). The distinction is ultimately unimportant in this case.

Plaintiff admitted during discovery that his mailing address during the entire month of January, 2009, remained 621 South Fayette, Saginaw Michigan 48602; the address Defendant had on file and to which the notice was sent (Def.'s Mot. for Summ. J. Ex. 2 at 2). The notice was signed for, although not by Plaintiff, upon delivery at that address. (Pl.'s Mot. in Resp. to Summ. J. Ex. P).

Plaintiff's argument is unavailing. The UCC does not require that the notice actually be received in order for the secured party to have complied with its obligation, only that the notification be "reasonable as to the manner in which it is sent, its timeliness (i.e., a reasonable time before the disposition is to take place), and its content." (Mich. Comp. Laws Ann. § 440.9611). Plaintiff's unsupported claim that he had provided Defendant with a different mailing address, in contradiction with his own admission as to his mailing address during that time period, is insufficient evidence to establish any legitimate issue with regard to the reasonableness of Defendant's notice.

Plaintiff's second argument, presented for the first time in his response to the motion for summary judgment, is that the sale of the vehicle was not commercially reasonable. This argument is based entirely on conclusory, unfounded accusations of a collusive sale. (Pl.'s Mot. in Resp. to Summ. J. at 33). Plaintiff offers no evidentiary support whatsoever for his 11th hour accusations.

Therefore, both of Plaintiff's proposed defenses to Defendant's breach of contract counterclaim are without merit, and the court will grant summary judgment in favor of Defendant.

### IV. CONCLUSION

For the reasons stated above, Defendant is entitled to summary judgment on Plaintiff's counts I, II and IV, as well as on Defendant's counterclaim. Accordingly,

IT IS ORDERED that Defendant's motion to strike [Dkt. # 79] is DENIED, and its motion for summary judgment [Dkt. # 71] is GRANTED.


     s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  July 31, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 31, 2012, by electronic and/or ordinary mail.


     s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522