UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOMINIC CASTLEBERRY,

                           CIVIL ACTION NO. 10-11460

          Plaintiff,

                           DISTRICT JUDGE ROBERT H. CLELAND

v.

                           MAGISTRATE JUDGE R. STEVEN WHALEN

DAIMLER CHRYSLER TRUCK
FINANCIAL "aka" CHRYSLER
FINANCIAL SERVICES AMERICAS,
LLC,

          Defendant.
_____/

**REPORT AND RECOMMENDATION**

     Before the Court is Defendant/Counter-Plaintiff's Daimler Chrysler Truck Financial "aka" Chrysler Financial Services Americas, LLC's April 2, 2013 Motion for Attorney Fees and Costs [Docket #92][1], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Plaintiff/Counter-Defendant Dominic Castleberry has not filed a response to either the original motion or supplemental brief.

     For the reasons discussed below, I recommend that Defendant's Motion for Attorney Fees and Costs [Docket #92] be GRANTED to the extent that Defendant be awarded $67,006.75 in attorney fees and $124.86 in costs.

_____

[1] Pursuant to this Court's order, Defendant filed a supplemental brief on September 30, 2013 [Doc. #95].

Defendant be awarded $67,006.75 in attorney fees and $124.86 in costs.

# I.  BACKGROUND FACTS

In August 2007, Plaintiff/Counter-Defendant Dominic Castleberry ("Plaintiff") purchased a 2004 Freightliner Columbia truck, entering into a finance agreement for $48,170.00 with Defendant Daimler Chrysler Truck Financial "aka" Chrysler Financial Services Americas, LLC ("Defendant").[2] *Docket #7, Exhibit* 1.

On March 23, 2010 Plaintiff filed suit against  Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and present Defendant in 70th District Court in Saginaw, Michigan, alleging negligence, defamation, violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681s-2; and Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq*. *Docket #1, Exhibit 1* at 6-10.

The state court Complaint contains the following allegations against Defendant.  In January, 2009, Plaintiff attempted to work out a modification of the August, 2007 finance agreement due to a decline in freight volume and increasing fuel prices.  *Docket #1, Exhibit 1, Complaint* at ¶12.  After Defendant refused to modify the loan agreement, Plaintiff arranged for the voluntary repossession of the vehicle.  *Id.* at ¶13.  Plaintiff alleges that in December, 2009, he was denied credit as a result of derogatory and inaccurate information on his credit report related to the vehicle repossession.  *Id.* at ¶14. Between December, 2009

---

[2]Present Defendant is now know as Mercedes-Benz Financial Services USA LLC.

and March, 2010, Plaintiff made numerous but unsuccessful attempts to have the disputed entries removed from his credit report. *Id.* at ¶¶15-38.

On April 13, 2010, Experian removed the case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. *Docket #1.* On April 20, 2010, present Defendant filed a counterclaim for breach of contract for recovery of the deficiency on the repossessed vehicle in the amount of $29,211.41. *Docket #7* at 14-15. Plaintiff stipulated to Experian's dismissal on June 9, 2010, *Docket #16,* and to the dismissal of Equifax on October 4, 2010. *Docket #19.* On July 31, 2012, the Honorable Robert H. Cleland granted summary judgment in favor of present Defendant on Plaintiff's claims as well its counterclaim for breach of contract. *Docket #84-85.* On March 20, 2013, the District Court issued an amended judgment in the amount of $48,442.92.[3] *Docket #90-91.* In addition, the District Court found that Defendant was "contractually entitled" to "its reasonable attorney fees and costs incurred in seeking [that] amount." *Docket #90* at 5-6.

## II.   APPLICABLE LAW

### Attorney Fees and Non-Taxable Costs

The award of attorney fees is governed by Rule 54(d)(2), which requires the party seeking fees to "specify . . . the statute, rule, or other grounds entitling [him] to the award" Rule 54(d)(2)(B)(ii). " It has long been the general rule in the United States that a prevailing

---

[3]This amount represented the deficiency on the loan of $29,211.41 "plus 18% interest as of January 20, 2009 for a total of $48,442.92." *Docket #90* at 6.

party may not ordinarily recover attorneys fees in the absence of a statute or enforceable contract providing for a fee award." *Shimman v. International Union of Operating Engineers, Local 18,* 744 F.2d 1226, 1229 (6th Cir. 1984). "The American Rule's failure to fully compensate an injured party is justified by the rationale that 'since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel.'" *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)).

"The 'bad faith' exception to the American Rule allows attorney fees in certain exceptional cases where the opposing party has acted in bad faith." *Id.* "The bad faith considered by courts construing this exception generally falls within one of three categories: (1) bad faith occurring during the course of the litigation; (2) bad faith in bringing an action or in causing an action to be brought; and (3) bad faith in the acts giving rise to the substantive claim." *Id.* at 1230. "Indications of subjective bad faith are 'that the claims advanced were meritless, that [plaintiffs or their] counsel knew or should have known this, and that the motive for filing the suit was an improper purpose such as harassment.'" *Langnes v. Godfrey* 2009 WL 1109757, *2 (E.D.Tenn.,2009)(citing *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1375 (6th Cir.1987)). "To award attorney fees under the bad faith exception to the American Rule, a trial court must find the plaintiff's action was both entirely without color

-4-

and asserted for purposes of harassment, delay, or other improper reasons as meritlessness

alone will not suffice for such an award." *Id.*

## III.  ANALYSIS

In its April 2, 2013 motion, Defendant argued that it was entitled to attorneys' fees

in the amount of $108,425.00 and costs of $420.00, representing fees and cost for both the

breach of contract counterclaim and defending the FCRA and MCPA claims.  *Defendant's*

*Brief* at 7, *Docket #92.*  In its supplemental brief, Defendant states that it "no longer seeks

reimbursement" for fees and costs arising from the defense of the FCRA and MCPA claims

and now requests fees in the amount of $67,006.75.[4]  *Defendant's Exhibit A* at 3, *Docket*

---

[4]
   Defendant's withdrawal of its request for attorney fees pertaining to defense of the
FCRA and MCPA claims is well taken, as I would have recommended the denial of that
request. In filing the Complaint, Plaintiff did not challenge his obligations under the loan
agreement or Defendant's entitlement to enforce its rights under the defaulted loan
agreement.  Rather, the Complaint pertained to Defendant's reporting of the repossession to
the credit reporting bureaus.

   While the "common nucleus of operative fact" entitled Defendant to bring a
counterclaim to recover the deficiency on the loan, the legal basis for Counter-claim is
independent from the credit reporting allegations in the original Complaint.  *In re Steel*
*Network, Inc.,* 2011 WL 4002206, *4 (Bkrtcy. M.D.N.C.2011)(loan agreement clause
allowing for reasonable fees for enforcing  applicant's rights under loan agreement with
debtor did not extend to recovery of attorneys' fees for defending additional claims "clearly
[ ] outside the scope of the attorney fee provisions in the loan documents . . .").  Put
differently,  if Defendant had not filed its counter-complaint, it would be required to show
that because of Plaintiff's conduct, attorney fees were appropriate under either Rule 54(d)(2)
or the FCRA.  To show entitlement to attorney fees under Rule 54(d)(2) absent a contractual
agreement or statutory basis for fees, Defendant would be required to show that Plaintiff
acted in bad faith.  *See Smith*, *supra,* 829 F.2d at 1375.  Likewise, 15 U.S.C. § 1681n(c) and
§ 1681o(b), both require a showing of "bad faith" or the filing of a "pleading, motion, or
other paper" filed "for purposes of harassment."

   Defendant faults Plaintiff for "litigious conduct," "deficient discovery responses,"
"dilatory conduct," "baseless claims," and repeated disregard for "the Court's deadlines and

*#95-1.* Defendant's supplemental brief requests costs in the amount of $124.86.

### A. Entitlement to Attorney Fees Under the August, 2007 Finance Agreement

Defendant argues that it is entitled to fees under the terms of the finance agreement

which states as follows:

> If [Defendant] sues [Plaintiff], or if [Defendant] refers [Plaintiff's] loan to an
> attorney for collection, [Plaintiff] agree[s] to pay [Defendant] reasonable
> attorney's fees. [Plaintiff] further agree[s] to reimburse [Defendant] for its
> court costs and collection expenses incurred in enforcing [Defendant's] rights
> under this Agreement.

*Docket #72-2* at ¶10.   Thus, pursuant to the District Court's finding and under the plain

language of the loan agreement, Defendant is entitled to attorney fees for time spent pursuing

the deficiency on the loan. *Docket #90* at 5-6.

### B. Reasonable Attorney Fees

---

instructions." *Defendant's Brief, Docket #92* at 1, 3, 6.  However, the record does not support
the conclusion that Plaintiff acted in bad faith.  While Plaintiff did not provide his current
mailing address to the Court, the applicable docket entry indicates that this failure was due
to the fact that Plaintiff's work as a truck driver took him "on the road" for one to two weeks
at a time. *Docket #32* at 1. Moreover, Plaintiff apologized to the Court and opposing counsel
for his failure to timely provide an updated address. *Docket #27* at 3.  Although Plaintiff's
motion to add defendants and amend a cross claim was denied on the basis of untimeliness,
Magistrate Judge Charles Binder did not challenge Plaintiff's explanation that he missed a
deadline because he was "'overextended.'" *Docket #44* at 4.  While the District Court noted
that Plaintiff had argued repeatedly and unsuccessfully that he was entitled to a jury trial, the
Court's findings do not state or imply that Plaintiff acted in bad faith.  *Docket #90* at 3.
Plaintiff stipulated to the dismissal of Defendants Equifax and Experian. *Docket # 16, 19.*
The record suggests that Plaintiff's failure to meet other deadlines or file motions in
compliance with the Federal Rules of Civil Procedure was attributable to ineptitude rather
than bad faith.  Plaintiff's inability to abide by the Court's scheduling deadlines appears to
have prejudiced his own case more than Defendant's.  *Docket #50* at 4-5,

The Court uses the "lodestar" approach in determining the reasonableness of fees under the loan agreement. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), In *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir.1987), the Sixth Circuit, citing *Coulter v. State of Tennessee,* 805 F.2d 146, 149 (6th Cir.1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee." *Hensley* lists the 12 factors to be considered in awarding fees:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

461 U.S. at 430, fn 3.

## 1.  Hourly Rate

Michael Brady, a Partner with Warner Norcross & Judd LLP's ("WNJ's") practice group with 15.5 years of civil litigation states that he billed 47 hours in this case at an hourly rate of $295 in 2010 and 2011 and $325.00 in 2012 and 2013. *Affidavit of Michael Brady* at ¶¶2, 5, 12, *Docket #92-2, Exhibit 1.* He states further that Jennie Santos-Bourne, Senior Counsel for WNJ with six years of civil litigation experience billed 377.1 hours at an hourly

rate of $235.00 in 2010 and 2011 and $260 in 2012 and 2013. *Id.* at ¶¶4, 5, 12. Mr. Brady states that Katherine Brooks, an Associate in WNJ's Litigation Practice Group with 2.5 years of civil litigation experience performed 40.6 hours of work on this case at the same hourly rate billed by Ms. Santos-Bourne. *Id.* at ¶¶3, 5, 12.

The State Bar of Michigan's January, 2011 edition of Attorney Income and Billing Rate Summary Report places the WNJ attorneys' requested fee rate in roughly the 75th percentile fees for attorneys with similar experience but at the "median" rate for firms of comparable size. *Defendant's Exhibit 2* at 8-9 of 17, *Docket #92-3.* Thus, the hourly rates claimed are reasonable for attorneys with this level of experience. I also note that Plaintiff has not challenged these hourly rates.

### 2. Time Expended

In Defendant's supplemental brief, counsel notes that the original attorney fee request of $108,845.77 was reduced to $67,006.75 to reflect only fees incurred in working on the counter-claim. Where case activity involved both the counter-claim and the defense of the FCRA and MPCA claims, counsel states that "commingled" billable hours were reduced by one quarter, half, or three quarters to reflect the portion of time spent on the counter-claim. *Brady Supplemental Affidavit* at ¶12. *Docket #*95-1.

The number of hours claimed for work on the counter-claim is reasonable. While deficiencies in Plaintiff's own actions in this case might not amount to bad faith, Defendant's position that it was required to expend additional hours as a result of Plaintiff's ineptitude

and repetitious arguments is well supported by the record, and supports the claim for significant billable hours.  And of course, Defendant's attorneys achieved a fully favorable result.  And I again not that Plaintiff has not disputed either Defendant's original motion for fees or the supplemental request.  Accordingly, Defendant's uncontested supplemental request for attorney fees should be granted in the amount of $67,006.75.

### C.  Non-Taxable Costs

Defendant's amended request for $124.86 in non-taxable costs should also be granted.  The language of Rule 54(d)(2) stating that non-taxable costs "should be allowed to the prevailing party" creates a presumption in favor of awarding costs. "[C]ircumstances in which a denial of costs is a proper exercise of discretion under the rule" include "cases where taxable expenditures by the prevailing party are unnecessary or unreasonably large." "The prevailing party should be penalized for unnecessarily prolonging trial or for injecting unmeritorious issues," or "cases where the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the defendant." *White & White, Inc. v. American Hosp. Supply Corp.,*  786 F.2d 728, 730 (6th Cir. 1986)(internal citations omitted).

Defendant's costs are not "unnecessary or unreasonably large." Moreover, a review of the docket entries shows that Defendant did not unnecessarily prolong the case.  The judgment of $48,442.92 is not "insignificant."  Plaintiff has not disputed the propriety or amount of the costs.  As such, I recommend that Defendant be awarded costs in the amount of $124.86.

### IV.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Attorney Fees and Costs [Docket #92] be GRANTED to the extent that Defendant be awarded $67,006.75 in attorney fees and $124.86 in costs.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 2, 2014                    s/R. Steven Whalen
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

-10-

I hereby certify that a copy of the foregoing document was sent to parties of record on January 2, 2014, electronically and/or by U.S. mail.

s/Michael Williams
Case Manager for the
Honorable R. Steven Whalen